

CDJ  $350.00

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

PATRICIA HURTADO HERRERA
6524 Bradford Ter.                                   CIVIL NO.
Philadelphia, PA 19149,
                                                     12      6783

                          Plaintiff

              v.

WELLS FARGO BANK N.A.
464 California Street
San Francisco, CA 94104,

                          Defendant

## COMPLAINT

### I.    JURISDICTION AND VENUE

1. This Court has <u>subject matter jurisdiction</u> over this action under the Equal Credit Opportunity Act, 15 U.S.C. §1691e.

2. <u>Venue</u> rests with this Court as the actions giving rise to the cause of action took place within the Eastern District of Pennsylvania.

### II.   PARTIES

3. Plaintiff Patricia Hurtado-Herrera (hereinafter, "Ms. Hurtado-Herrera" or "Plaintiff") is a natural individual who resides in Philadelphia, Pennsylvania.

4. Defendant, Wells Fargo Bank, NA, is a corporation doing business in Pennsylvania, with a principal place of business in California.

### III.  FACTUAL ALLEGATIONS

5. Ms. Hurtado-Herrera wanted to purchase a home, and was interested in buying the property 6248 Marsden Street, Philadelphia, 19135.

6. In order to buy the home, Ms. Hurtado-Herrera applied to defendant Wells Fargo Bank for a loan.

7. In response to Ms. Hurtado-Herrera's initial application, Wells Fargo sent her a preapproval confirmation dated March 29, 2012, stating that her application, credit check and first decision phase were complete, and that she had been preapproved for a loan in the amount of $63,352. A true and correct copy of the preapproval confirmation is attached here as Exhibit 1.

8. Ms. Hurtado-Herrera therefore entered into a written sales agreement to buy 6248 Marsden Street, Philadelphia, bearing the date March 29, 2012. A true and correct copy of the agreement of sale is attached hereto as Exhibit 2.

9. Ms. Hurtado-Herrera tendered $4,000 to the real estate agent handling the sale as a deposit.

10. Wells Fargo sent Ms. Hurtado-Herrera a Good Faith Estimate for the loan dated April 17, 2012. A true and correct copy is attached hereto as Exhibit 3.

11. Wells Fargo sent Ms. Hurtado-Herrera a commitment letter dated June 1, 2012. A true and correct copy is attached here as Exhibit 4.

12. The week of the closing on the sale of the home arrived, but Ms. Hurtado-Herrera still had not heard from her Wells Fargo loan officer about the loan approval. She called her real estate agent, who told her that Wells had denied her loan application, despite the prior correspondence indicating that she would be approved.

13. The seller of the property will not authorize the return of Ms. Hurtado-Herrera's $4,000 deposit unless she provides a copy of a letter from Wells Fargo denying her loan application.

14. Further, Ms. Hurtado-Herrera has received calls from the Allstate Insurance Company, stating that she owes them $65 for insurance that was purchased just prior to the scheduled closing of the sale of the property.

15. The caller on behalf of Allstate told Ms. Hurtado-Herrera that Allstate requires a letter from the bank stating that the mortgage loan was denied.

16. Ms. Hurtado-Herrera never received a written denial of her loan application from Wells Fargo.

17. Ms. Hurtado-Herrera has contacted Wells Fargo to ask for a written loan denial.

18. On August 13, 2012, undersigned counsel Ms. Goodell called Wells Fargo, spoke with manager Brian Dooley, and told him that Ms. Hurtado-Herrera had not received a written denial of her loan application.

19. Mr. Dooley said that computer records showed that a letter had been sent.

20. Ms. Goodell repeated the statement to Mr. Dooley that, whatever Wells' computer records showed, Ms. Hurtado-Herrera had not received a written denial and that she needed it to recover the purchase deposit.

21. Mr. Dooley told Ms. Goodell that the denial letter would be mailed within forty eight (48) hours.

22. Ms. Hurtado-Herrera did not receive the denial letter.

23. Ms. Goodell sent Mr. Dooley a letter dated September 26, 2012, asking again that the denial letter be sent, to both Ms. Hurtado-Herrera and to Ms. Goodell.

24. To date, neither Ms. Hurtado-Herrera nor Ms. Goodell has received a loan application denial letter from Wells Fargo.

## IV.    CAUSE OF ACTION

### EQUAL CREDIT OPPORTUNITY ACT (ECOA)

25. The averments set forth above are incorporated herein.

26. ECOA requires that a lender provide a written notice of denial of a loan application. 15 U.S.C. §1691(d)(2).

27. Ms. Hurtado-Herrera has been harmed by Wells Fargo's failure to provide the notice of denial in the amount of the deposit, $4,000, interest thereon, and the payment claimed by Allstate, $65.

**WHEREFORE,** Plaintiff requests that this Court award her actual damages in the amount of $4,065; punitive damages of $10,000; and attorney's fees and costs of suit, pursuant to 15 U.S.C. §1691e.

Dated:  Nov. 27, 2012

Respectfully submitted,

/s/ Elizabeth C. Goodell
Elizabeth C. Goodell, Esq.
Community Legal Services
3638 N. Broad Street
Philadelphia, PA 19140

RC 935
ROBERT P. COCCO, P.C.
Attorney for Plaintiff
By:  Robert P. Cocco, Esquire
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102

215-351-0200

Attorneys for Plaintiff
*Proceeding IFP*

**EXHIBIT 1**

WELLS FARGO BANK, N.A.

03/29/2012

PATRICIA HURTADO
6524 BRADFORD TR
PHILADELPHIA, PA 19149

Dear: PATRICIA HURTADO

Please share this letter with your REALTOR® as confirmation you have obtained a *Priority*Buyer® preapproval from
WELLS FARGO BANK, N.A.

1

Your application, credit check and the first decisioning phase are complete, and you are preapproved for a purchase
price of $ 65,000.00                              and a loan amount of up to $ 63,352.00

A reliable *Priority*Buyer preapproval means you are a ready-to-buy customer and represents the shortest distance
between your opening offer and the closing table. With your purchase price range confirmed in writing, you and
your REALTOR make the most of time spent looking at homes.

If you have questions about this information or need anything else, please contact me. I look forward to helping you
achieve your homeownership goals.

Sincerely,

EDWARD KARPINSKI
Home Mortgage Consultant
215-635-8707
EDWARD.J.KARPINSKI@WELLSFARGO.COM
152429

1. A *Priority*Buyer® preapproval is based on our preliminary review of credit information only and is not a commitment to lend.
We will be able to offer a loan commitment upon verification of application information, satisfying all underwriting requirements
and conditions, and providing an acceptable property, appraisal, and title report. This *Priority*Buyer letter is subject to
verification and approval of your application information and product and property acceptability and eligibility.

Information is accurate as of the date of printing and is subject to change without notice.

NMFL #1020 - All rights reserved.

**EXHIBIT 2**

## STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

ASR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

### PARTIES

BUYER(S): Patricia Hurtado,

SELLER(S): Estate of Alfred R. Romig ,

BUYER'S MAILING ADDRESS:
6824 Bradford Terrace, Philadelphia, pa
19149

SELLER'S MAILING ADDRESS:
6248 Marsden Street, Philadelphia PA 19135

### PROPERTY

PROPERTY ADDRESS 6248 Marsden Street, Philadelphia, pa

ZIP 19135

in the municipality of _____, County of philadelphia
in the School District of philadelphia , in the Commonwealth of Pennsylvania.
Identification (e.g., Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date): 412016700

### BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Buyer is not represented by a broker)

| | |
|---|---|
| Broker (Company) anchor realty northeast | License(s) (Name) Michael R Trantz |
| Company Address 7035 Frankford ave, Philadelphia, pa 19135 | Direct Phone(s) (215) 333-1116 |
| | Cell Phone(s) (215) 778-3877 |
| Company Phone (215)333-1116 | Fax |
| Company Fax | Email |
| Broker is: | License(s) is: |
| ☒ Buyer Agent (Broker represents Buyer only) | ☐ Buyer Agent with Designated Agency |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☒ Buyer Agent without Designated Agency |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

### SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Seller is not represented by a broker)

| | |
|---|---|
| Broker (Company) Howard Hanna Philadelphia Realty | License(s) (Name) Vincent Marciano |
| Company Address 2514 s. Broad St, Philadelphia, pa 19145 | Direct Phone(s) |
| | Cell Phone(s) (215) 498-6406 |
| Company Phone (215) 755-6700 | Fax |
| Company Fax | Email |
| Broker is: | License(s) is: |
| ☒ Seller Agent (Broker represents Seller only) | ☐ Seller Agent with Designated Agency |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☒ Seller Agent without Designated Agency |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

### DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: PH

ASR Page 1 of 11
Revised 1/12

Seller Initials: MCR

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2012
1/10

Pennsylvania Association of REALTORS®

Anchor Realty Northeast 7035 Frankford Ave Philadelphia, PA 19135    Phone: 215-333-1116    Fax: 215-333-5313    GVI Marciano
Walter Lapinski    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

1. **By this Agreement,** dated March 29, 2012

   Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (1-10)**

   (A) Purchase Price $ 65,000.00

   ( Sixty-Five Thousand

   | | | U.S. Dollars), to be paid by Buyer as follows: |
   |---|---|---|
   | 1. Deposit at signing of this Agreement: | $ | |
   | 2. Deposit within _10_ days of the Execution Date of this Agreement: | $ | 1,000.00 |
   | 3. | $ | 4,000.00 |
   | 4. Remaining balance will be paid at settlement. | $ | |

   (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 DAYS of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.

   (C) Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____ ),
   who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**

   Seller will pay $3,000.00 _____ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (1-10)**

   (A) Settlement Date is _____ May 25, 2012 _____ , or before if Buyer and Seller agree.

   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.

   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes (see Notice Regarding Real Estate Taxes); rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other fireable municipal service fees. All charges will be pro-rated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____

   (D) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____

   (E) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____

   (F) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.

   (G) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
   ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached.

5. **DATES/TIME IS OF THE ESSENCE (1-10)** April 12, Mcc

   (A) Written acceptance of all parties will be on or before: March 31, 2022

   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.

   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be initialed and dated.

   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

   (E) Certain times and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties.

6. **ZONING (1-10)**

   Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

   Zoning Classification: residential

Buyer Initials: PHH / ___

ASR Page 2 of 11
Revised 1/12

Seller Initials: Mcc ___

Produced with zipForm® by zipLogix 18770 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

6241 Marsden

65 **7. FIXTURES AND PERSONAL PROPERTY (3-10)**

66   (A) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, and other items including
67   plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pool and spa equipment (including
68   covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; tele-
69   vision antennas; unpotted shrubbery, plantings and trees; any remaining heating and cooking fuels stored on the Property at the
70   time of settlement; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall
71   carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, shades and blinds;
72   awnings; built-in air conditioners; built-in appliances; the range/oven, unless otherwise stated; and, if owned, water treatment sys-
73   tems, propane tanks, satellite dishes and security systems. Also included: _____
74   _____
75   (B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment
76   systems, propane tanks, satellite dishes and security systems): _____
77   (C) EXCLUDED fixtures and items: _____
78   _____

79 **8. MORTGAGE CONTINGENCY (3-10)**
80   ☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the par-
81   ties may include an appraisal contingency.
82   ☒ ELECTED.
83   (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property. | Second Mortgage on the Property. |
|---|---|
| Loan Amount $ 62,000.00 | Loan Amount $ |
| Minimum Term 30 years | Minimum Term _____ years |
| Type of mortgage | Type of mortgage |
| Loan-To-Value (LTV) ratio: | Loan-To-Value (LTV) ratio: |
| For non-FHA/VA loans LTV ratio not to exceed ____% | For non-FHA/VA loans LTV ratio not to exceed ____% |
| Mortgage lender | Mortgage lender |
| Interest rate 4.250 %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of 5.500 %. | Interest rate ____%; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of ____%. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (exclud-ing any mortgage insurance premiums or VA funding fee) not to exceed ____% (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (exclud-ing any mortgage insurance premiums or VA funding fee) not to exceed ____% (0% if not specified) of the mortgage loan. |

99   (B) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guar-
100  antee the interest rate(s) and fee(s) at or below the maximum levels stated. If Lender(s) gives Buyer the right to lock in the inter-
101  est rate(s), Buyer will do so at least ___15___ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and
102  as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to the Buyer and/or
103  the mortgage lender(s) to make the above mortgage term(s) available to Buyer.
104  (C) Within ____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed, written mort-
105  gage application (including payment for and ordering of appraisal and credit reports without delay, at the time required by
106  lender(s)) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible
107  mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with
108  the mortgage lender(s) to assist in the mortgage loan process.
109  (D) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial
110  and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including delay
111  of the appraisal), fails to lock in interest rate(s) as stated in Paragraph 8(B), or otherwise caused the lender to reject, refuse
112  to approve or issue a mortgage loan commitment.
113  (E) 1. Mortgage Commitment Date: May 15, 2012   _MCC_   Upon receiving a mortgage commitment, Buyer will
114       promptly deliver a copy of the commitment to Seller.
115    2. If Seller does not receive a copy of the mortgage commitment(s) by the Mortgage Commitment Date, Seller may terminate
116       this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers a mortgage commitment
117       to Seller. Until Seller terminates this Agreement, Buyer is obligated to make a good-faith effort to obtain mortgage financing.
118    3. Seller may terminate this Agreement by written notice to Buyer after the Mortgage Commitment Date if the mortgage commitment:
119       a. Does not satisfy the terms of Paragraph 8(A), OR
120       b. Contains any condition not specified in this Agreement (e.g., the Buyer must settle on another property, an appraisal must
121          be received by the lender, or the mortgage commitment is not valid through the Settlement Date) that is not satisfied and/or
122          removed in writing by the mortgage lender(s) within ___7___ DAYS after the Mortgage Commitment Date in Paragraph
123          8(E)(1), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g.,
124          obtaining insurance, confirming employment).
125    4. If this Agreement is terminated pursuant to Paragraphs 8(E)(2) or (3), or the mortgage loan(s) is not obtained for settlement,
126       all deposit monies will be returned to Buyer according to the terms of Paragraph 23 and this Agreement will be VOID. Buyer
127       will be responsible for any costs incurred by Buyer for: any inspections or certifications obtained according to the terms of
128       this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any
129       fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancel-
130       lation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

131 Buyer Initials: _PAB_   ASR Page 5 of 11   Seller Initials: _MCG_
                                 Revised 1/12

601  (B) Additional Terms:
602
603
604
605
606
607
608
609
610
611
612
613
614
615
616
617
618  Buyer and Seller acknowledge receipt of a copy of this Agreement the time of signing.

619  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which coun-
620  terparts together shall constitute one and the same Agreement of the Parties.

621  NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT. Parties to this transaction are
622  advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

623  Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
624  of all parties, constitutes acceptance by the parties.

625  *PHH 1* _____ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code
626  §35.336.

627  *PHH 1* _____ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

628  *PHH 1* _____ Buyer has read and understands the notices and explanatory information in this Agreement.

629  *PHH 1* _____ Buyer has received a Seller's Property Disclosure Statement before signing this Agreement, if required by law
630  (see Information Regarding the Real Estate Seller Disclosure Law).

631  *PHH 1* _____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit
632  money) before signing this Agreement.

633  *PHH 1* _____ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale, and
634  the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978)

635  BUYER *Patricia Hurtado H.*                               DATE *02-29-12*
       Patricia Hurtado

636  BUYER _____                    DATE _____

637  BUYER _____                    DATE _____

638  Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
639  Seller has received a statement of Seller's estimated closing costs before signing this Agreement.
640  Seller has read and understands the notices and explanatory information in this Agreement.

641  SELLER *Michalene C. Chulan*                              DATE *04/10/12*
       Estate of Alfred F. Romig
       MARY

642  SELLER _____                   DATE _____

643  SELLER _____                   DATE _____

**EXHIBIT 3**

04/17/12

PATRICIA HURTADO
6524 BRADFORD TR
PHILADELPHIA            PA 19149

Re: Enclosed is your Good Faith Estimate for mortgage loan number 0̶

*Please note that the enclosed Good Faith Estimate is the most current estimate of fees for this mortgage and replaces any earlier versions.*

THANK YOU FOR YOUR MORTGAGE APPLICATION. WE'RE HAPPY TO HAVE THE OPPORTUNITY TO HELP YOU FINANCE YOUR HOME.

**What you need to know about your Good Faith Estimate**
Your Good Faith Estimate will help you gain an understanding of all the closing costs and fees that may be associated with getting this mortgage. Your GFE may also have a supplemental page to ensure all fees can be listed for your review.

Because this estimate covers quite a bit of information, we've also included a helpful guide that will walk you through the document. The guide will help you more easily understand the information and key points covered in your estimate.

**What you need to do**
It's important for you to carefully review your Good Faith Estimate, the Supplement, and the important points provided in the enclosed guide. Changes to the information in this estimate may require us to provide you with a new Good Faith Estimate, which may impact your closing date.

IF YOU FIND ANY INACCURACIES ON YOUR GOOD FAITH ESTIMATE OR THE SUPPLEMENT, PLEASE CONTACT US IMMEDIATELY.

**Important notes**

These "important notes" may or may not apply to your mortgage.

If you have applied for an FHA mortgage, you may pay the Upfront Mortgage Insurance Premium in cash or finance it as part of your mortgage amount. This charge will be included on page 2, #3 in your Good Faith Estimate. FHA requires a minimum of 15 days interest for qualifying purposes on page 2, #9 in your Good Faith Estimate. This amount will be adjusted on your final Settlement Statement/HUD-1 based on the date your loan closes or funds. Refer to the Good Faith Estimate Guide for further fee explanation.

If you have applied for a VA mortgage, you may pay the Funding Fee in cash or finance it as part of your mortgage amount. This charge will be included on page 2, #3 in your Good Faith Estimate. Refer to the Good Faith Estimate Guide for further fee explanation.

IF YOU HAVE APPLIED FOR A BUILDER BEST[SM] MORTGAGE AND HAD TO PAY A CLOSING COMMITMENT DEPOSIT, THIS DEPOSIT WILL NOT BE INCLUDED IN YOUR GOOD FAITH ESTIMATE. THE CLOSING COMMITMENT DEPOSIT FOR THE BUILDER BEST PROGRAM WILL BE CREDITED TO YOUR CLOSING COSTS ON THE HUD1 AT YOUR PERMANENT LOAN CLOSING. FOR FURTHER INFORMATION, PLEASE REVIEW YOUR BUILDER BEST AGREEMENT DISCLOSURE WHICH WAS PROVIDED TO YOU BY YOUR HMC.

ONCE AGAIN, THANK YOU FOR GIVING US THE OPPORTUNITY TO HELP YOU FINANCE YOUR HOME.

EDWARD KARPINSKI, NMLSR ID 152429
WELLS FARGO BANK, N.A.

Information is accurate as of date of printing and is subject to change without notice.
NMFL #0066        Doc ID: GFLW       Rev: 5/2011

# EXHIBIT 4

06/01/12


PATRICIA HURTADO HERRERA
6524 BRADFORD TR
PHILADELPHIA, PA 19149

Loan #: ~~XXXXXXXXX~~

Dear **PATRICIA HURTADO HERRERA**

Thank you for choosing **WELLS FARGO BANK, N.A.**
                                                        to finance your home.  We are dedicated to providing you with
an outstanding experience. Please do not hesitate to make us aware of any questions, issues or concerns
you may have so we can address them right away.

The enclosed commitment letter explains your loan conditions and documents needed to finalize your
mortgage.  All documentation needed prior to closing on your new loan must be in our office or processing
center and approved no fewer than five business days before closing.  Learn more about the documents
requested at the document library located at www.wellsfargo.com/home_center/reference/.

We value your feedback. Shortly after closing on your home mortgage, you will receive a survey regarding
the level of service you received throughout your home financing experience. We would appreciate you
taking the time to complete and return it. Our goal is to provide outstanding levels of service that result in
you wanting to use us again in the future and recommend us to friends and family.

Please contact me at                            any time during the loan process if you have questions, concerns or
need further clarification.

Again, thank you for choosing **WELLS FARGO BANK, N.A.**


Cordially,

*Edward Karpinski (215)635-8707*
Mortgage Consultant

0340272335

## FHA/VA Commitment Letter (Notice of Terms)

Loan Number: ~~████████~~

RE: PATRICIA HURTADO HERRERA

Property Address: 6248 MARSDEN ST, PHILADELPHIA, PA   19135

    Congratulations! Your loan application has been approved subject to the terms and conditions in this commitment letter. This commitment, issued by **WELLS FARGO BANK, N.A.**
**A LEADING INDUSTRY MORTGAGE PROVIDER**
(the "Lender"), is made based on the mortgage loan product and terms available as of the date of this letter. You may be required to provide documentation that is acceptable to the Lender. If the documentation you provide does not satisfy the terms and conditions, your final approval is not guaranteed and the Lender may require additional information and review. The terms of this commitment may change if additional mortgage loan product requirements are imposed by investors, government agencies, government-sponsored entities or mortgage insurers. You may be subject to re-qualification based on additional documentation or additional loan requirements as mandated by those entities. This commitment is also  subject to reconsideration if there is any material change in your financial status, in the information provided in your application or on the condition of the property.

Product **FIX30**                                         Loan amount $            63,822.00
Loan term(months) 360     Simple interest rate  3.875 %.
    Unless the section titled "Locked-In" below is checked, you have elected to FLOAT and the interest rate designated above reflects the interest rate used for qualifying.  The interest rate and discount points for your loan application will go up and down depending on market conditions until your loan is price protected. Your monthly payments will consist of principal and interest in the approximate amount of $       300.11            and escrow payments. Your payment is due on the first day of each month without exception.  A late payment service charge of 4.00        percent will be charged on payments received after the end of 15 calendar days after the payment is due. Your loan must close and fund prior to the interest rate lock-in expiration date and prior to the commitment expiration date.  Your interest rate lock-in expiration date is 06/15/12   .  If you cannot close and fund prior to this date for any reason, you will be required to re-price your loan.  Your commitment expiration date is 06/14/12   . If you cannot close and fund prior to this date, you may be required to provide additional documentation and your loan will be resubmitted for credit approval.

### Interest Rate Adjustment - ARM Option
_____ If this line is checked, you have been approved for an Adjustable Rate Mortgage (ARM). You will be notified of your First Interest Rate Change Date and your interest rate will be adjusted every twelve months thereafter. Your adjusted interest rate will be based on an Index plus a Margin, subject to the interest rate caps explained in the ARM Disclosure and Description of Program provided to you earlier.

### FHA/VA Conditions
All conditions set forth on the FHA Conditional Commitment or the VA Certificate of Reasonable Value (CRV) must be satisfied.

### Lock-In
__X__ If this line is checked, you have elected to lock in the interest rate and discount points for your application, which means that if your loan is closed and funded within the Price Protection Period, we will make the loan at the interest rate and discount points specified in this letter. If your loan is not closed and funded within the Price Protection Period, your interest rate and discount points range will adjust to current market rates, you will be required to pay any applicable fees and your loan will be subject to any changes that may have been made to your loan program. Your interest rate and discount points are subject to adjustment based on the risk factors of your mortgage application and credit profile as explained in the Loan Pricing Disclosure.

### Escrow
Your monthly payment will include an amount for taxes, hazard insurance premiums, premiums for other insurance you may have (such as flood insurance or FHA mortgage insurance), and other items that may be required to be escrowed under the terms of the Loan agreement.

NMFL #0097 (FVCL) Rev. 3/2011                                                                      MFL #009 Page V of 4 Rev. 3/24

12:53:37 PM

**Flood Insurance**
FHA loans require coverage in the amount 100% of the insurable value of the improvements, (also called 100% Replacement Cost), as determined by the hazard insurance provider up to the maximum coverage available under the NFIP. VA loans require coverage in the amount of the unpaid principal balance (loan amount) up to 100% of the insurable value of the improvements, (also called 100% Replacement Cost), as determined by the hazard insurance provider up to the maximum coverage available under the NFIP. Separate requirements apply to condominium units.

**Origination Charge and Loan Discount**
Buyer/Seller must pay, at closing, a total Loan Origination Charge of $    699.00 (not including the MIP if financed) and a total loan discount of $ N/A          . If you've elected to float your rate and points, refer to the Election Form given to you at the time of application. For an FHA loan, Buyer must either pay or finance the up-front Mortgage Insurance Premium of $   1,097.69  and must pay a monthly MIP charge to start at $   64.80 per month. For a VA loan Buyer must also pay and/or finance the VA Funding Fee of $                   .

**New Construction**
New construction is subject to the proposed home being 100 percent completed prior to loan closing in accordance with the approved plans and specifications. We must receive evidence that all contractors and materialmen have waived their rights to a mechanic's lien. An approved final inspection will be required prior to closing along with photos of the completed property.

**Credit Documents**
All credit documents over 120 days old as of the date of the closing will need to be updated prior to loan closing to ascertain that your ability to repay has not changed adversely. (New construction credit documents over 180 days old at time of closing must be updated.)

**Program Availability**
We reserve the right to modify or eliminate this loan program at any time without notice to you. If the program is eliminated or you no longer qualify because of program modifications, this Approval will be void and you will be required to submit a new application for a different loan program.

**Title Insurance or Attorney's Certificate**
We must be furnished with an acceptable title insurance policy (or title guarantee policy in the State of Iowa) issued by a company or attorney satisfactory to us. The policy must name us as an insured in the amount of the loan and must insure the Security Instrument to be valid first lien on the property, free from all exceptions except those approved by us. If questions of survey are raised in connection with the title policy, we may/will require you to furnish us with a survey of the subject property.

**Hazard Insurance**
We must be furnished at closing with a copy of an original policy of hazard insurance or an original 90-day binder with a paid receipt for the first year's insurance premium insuring the subject property against loss by fire and hazards included in the term "extended coverage", and such other hazards as is customary to insure against in the area where the property is located. The coverage amount required is 100% of the insurable value of the improvements, (also called 100% Replacement Cost), as determined by the hazard insurance provider. The insurance policy must indicate "replacement" or an equivalent statement. Separate requirements apply to condominium units. This insurance policy must be obtained from an acceptable company (Best general rating of at least B and a financial size rating of at least III), must be in a form acceptable to us, and must have a loss payable provision designating the mortgagee as follows:

   X   Wells Fargo Bank, N.A., its successors and/or assigns, P.O. BOX 100515   ,
FLORENCE, SC 29502-0515          Loan #

NMFL #0067 :FV ·             NMFL    · Pag  ·  ·

**Assessments**
Special assessments may be assumed provided that the assessment is recognized on the Appraisal or CRV or an amendment to the Appraisal or CRV. The appraised value must be reduced by the unpaid amount of the special assessment which will reduce your maximum mortgage amount.

**Legal Documents**
The Note and Security Instrument evidencing and securing the loan must be executed and delivered to us at the loan closing and must be acceptable to us in form and substance.

**Payment of Fees**
By accepting this commitment, Buyer/Seller agrees to pay all closing costs, including recording fees, mortgage registration tax, tax service fees, fees or premiums for title examination, abstract of title, title insurance, survey expenses, appraisal fees, private mortgage insurance (if applicable), cost of credit report, document preparation fees, and attorney's fees (if outside counsel is engaged by us). Additional fees payable by you are listed in the Good Faith Estimate you were provided separately, which is incorporated in this Commitment Letter by reference.

**Legal Compliance**
The property must comply with applicable zoning, building, and other laws and regulations.

**Modification**
We reserve the right to withdraw this approval, or to modify the terms as required, if any material facts appear which have not been previously revealed to us by you.

**Prepayment Penalties**
No prepayment penalty.

**Additional Conditions**
The conditions indicated below may be required to be received in our office as early as 5 business days prior to your scheduled closing date. The requirements for each condition will be fully explained by your mortgage representative. Verification of your scheduled settlement date should be made at this time.

- __X__ Acceptable Title Binder (or Title Guarantee in the State of Iowa)
- _____ Survey dated within six months of Closing
- _____ Copy of Master Plat and Certificate of Insurance (if Condo)
- _____ Acceptable Clear Termite Certification dated within 60 days of closing
- _____ Water analysis by a certified health authority showing that water is safe and sanitary on bacteria and nitrates and meets the chemical and bacteriological standards of the State Department of Health. Maximum age of this analysis at closing is six months. Water samples must be drawn by proper authority
- _____ Well Certification from proper authority or laboratory
- _____ Septic Certification from proper authority
- _____ Community Water System requires verification from Water Commission
- _____ Final Compliance Inspection (Advise when we are to order)
- _____ Certificate of Occupancy
- _____ Certification of HOW Warranty or Home Buyers Warranty
- _____ For refinance: Copy of present hazard insurance policy with endorsement as shown above and coverage in the amount of $ _____
- _____ Satisfaction of Appraisal Conditions
- _____ Settlement statement showing adequate proceeds from sale of present home in the amount of $ _____
- _____ Evidence of zero balance for the following accounts in the form of a paid-in-full statement or both sides of canceled checks with most recent statement:

The following are closing conditions that must be satisfied at the time of loan closing:

1. THE LENDER IS REQUIRED TO PROVIDE A TRUTH IN LENDING (TIL) DISCLO-
   SURE TO THE BORROWER 3 DAYS BEFORE CLOSING IF THE APR CHANGES SIG-
   NIFICANTLY.  PURSUANT TO FEDERAL LAW, THE APR CANNOT INCREASE MORE
   THAN .125% OR A NEW TIL MUST BE PROVIDED AND THE 3-DAY WAIT PERIOD
   RESTARTS.  IF YOU HAVE QUESTIONS ABOUT THE APR, CONTACT YOUR LENDER
   IMMEDIATELY.
2. SELLER (  ) MAY NOT CONTRIBUTE ( X ) MAY CONTRIBUTE $  3,000.00
   TOWARDS THE BORROWER'S CLOSING COSTS.  TOTAL CONTRIBUTIONS BY SELLER
   INCLUDING DISCOUNT POINTS CANNOT EXCEED (  ) 2% (  ) 3% ( X ) 6%
   (  ) 00 % OF THE LESSER OF THE SALES PRICE OR APPRAISED VALUE.
3. ACCEPTABLE     WELL CERT.     SEPTIC CERT.   X TERMITE CERT.
4. VERIFY LIENS AGAINST SUBJECT PROPERTY PAID IN FULL.
5. SIGNED AND COMPLETED IRS FORM #4506.
6. BORROWER'S TO SIGN FINAL TYPED 1003 AND 92900A AT OR BEFORE CLOSING.
   SEE ATTACHED PAGE FOR CLOSING CONDITIONS

If you have any questions regarding your Loan Commitment, please contact

Maurice Madison / Processor    (X 3((87)       6/4/12
Name/Title                     Phone            Date

1-800-410-3060